FILED
CLERK
May 11, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
WINDMILL DISTRIBUTING COMPANY,
L.P., as Plan Administrator and a Fiduciary of
the Windmill Distributing Company LP 401(k)
Profit Sharing Plan,

                Plaintiff,

      -against-

SHALINI JAIGOBIND,
PRABHACOOMARIE ARJOON,
JEAN CHOWLAN,
BRANDON LEE RAMESH AARONS
RAMRATTAN, and
the ESTATE OF SHREE RAMESH
RAMRATTAN,

                Defendants.
-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
23-CV-01407 (KAM) (JMW)

**A P P E A R A N C E S:**

Christopher John Moro, Esq.
**Nixon Peabody LLP**
275 Broadhollow Road, Ste 300
Melville, NY 11747
*Attorney for Plaintiff*

Myra Benjamin, Esq.
**Nixon Peabody LLP**
799 9th Street, Ste 500
Washington, DC 20001
*Attorney for Plaintiff*

Gerard A. Lucciola, Esq.
**The Lucciola Law Group PC**
55 Broadway 23rd Fl.
New York, NY 10006
*Attorney for Defendant
Prabhacoomarie Arjoon*

Peter E. Brill, Esq.
**Brill Legal Group, P.C.**
64 Hilton Ave.
Hempstead, NY 11550[1]
*Attorney for Defendant*
*Brandon Lee Ramesh Aarons Ramrattan*

*No appearances by Defendants*
*Shalini Jaigobind,*
*Jean Chowlan, or*
*The Estate of Shree Ramesh Ramrattan*

**WICKS,** Magistrate Judge:

  Plaintiff Windmill Distributing Company, L.P. ("Windmill"), the Plan Administrator and a Fiduciary of the Windmill Distributing Company LP 401(k) Profit Sharing Plan, is a disinterested stakeholder that brought the instant action for interpleader relief under the Employee Retirement Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") and Federal Rule of Civil Procedure 22 to require Defendants Prabhacoomarie Arjoon ("Arjoon"), Brandon Lee Ramesh Aarons Ramrattan ("Aarons"), Shalini Jaigobind ("Jaigobind"), Jean Chowlan ("Chowlan"), and The Estate of Shree Ramesh Ramrattan (the "Estate") (collectively, "Defendants") to settle amongst themselves, the claims and rights to the 401(k) death benefit resulting from the death of Shree Ramesh Ramrattan ("Ramrattan"). (DE 1.)

  Before the Court is Windmill's Motion for Interpleader Deposit pursuant to Rule 22, and 28 U.S.C. §§ 1335 and 2361 seeking an order: (1) allowing it to deposit $220,163 death benefit ("Proceeds") with the Court pending judgment, (2) discharging it from liability regarding the Proceeds, (3) dismissing it from this action with prejudice, (4) enjoining Defendants from instituting any action against it regarding the Proceeds, and (5) awarding it attorneys' fees in an

---

[1] The court docket reflects Mr. Brill's address as "150 Motor Parkway, Hauppauge NY 11788", but the Notice of Appearance filed by Mr. Brill (DE 19) reflects the Hempstead address above. Accordingly, the Court docket should be amended to reflect the correct address as noted in the Notice of Appearance.

amount to be determined at a later date and to be deducted from the Proceeds. (DE 24 at 1-2.) Arjoon opposes the motion only to the extent Windmill seeks attorneys' fees and dismissal. (DE 28.) No other opposition has been filed. This motion was referred to the undersigned by the Honorable Kiyo A. Matsumoto on April 25, 2023. (Electronic Order dated Apr. 23, 2023.)

For the reasons that follow, the undersigned respectfully recommends[2] that Windmill's Motion for Interpleader Deposit be GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Relevant Factual Background

Ramrattan passed away on July 22, 2022. (DE 1 at ¶ 11.) Before his death, Ramrattan had been employed by Windmill and was a fully vested participant in the Windmill Distributing Company LP 401(k) Profit Sharing Plan (the "Plan"). (DE 1 at ¶ 9.) At the time of his passing, Ramrattan's death benefit in the Plan equaled to $214,833.05, and as of the filing date of the instant motion, increased to $220,163.00. (DE 1 at ¶¶ 14.) The recordkeeper for the Plan had sent Ramrattan a beneficiary designation form so that he could register a beneficiary for his 401(k) assets, however, he never returned a completed form to Windmill. (DE 1 at ¶ 11.) At the time of his passing, neither Windmill nor the recordkeeper of the Plan had any record of Ramrattan designating a beneficiary. (DE 1 at ¶ 11-13.)

After Ramrattan's passing, each of the Defendants asserted a claim over the Proceeds, whether directly or indirectly. First, Chowlan reached out to Windmill in July 2022 to ask about the Proceeds and followed up with a letter representing that she is authorized to signed documents related to Ramrattan. (DE 1 at ¶ 15.) Second, Arjoon sent Windmill a completed

---

[2] "When courts confront motions for interpleader, they almost uniformly treat them as dispositive." *QBE Specialty Ins. Co. v. Kane as Tr. for Hawaii Island Air, Inc.*, No. 22-CV-00450 (SOM) (KJM), 2023 WL 1069703, at *4 (D. Haw. Jan. 27, 2023) (collecting cases).

beneficiary designation form on August 1, 2022, which provided that Arjoon was designated as Ramrattan's beneficiary. (DE 1 at ¶ 16.)

Third, that same month, Jaigobind reached out to Windmill to notify it that she was appointed as administrator for the Estate, that the Estate was entitled to the Proceeds, and she expressed her doubts about whether Arjoon's beneficiary designation form was valid. (DE 1 at ¶ 17.) And fourth, Windmill became aware that Aarons is currently in litigation with Jaigobind over which one of them should be appointed as the Estate's administrator. (DE 1 at ¶ 18.)

### B. Relevant Procedural Background

Windmill filed the Complaint on February 22, 2023. (DE 1.) The Summons and Complaint were served on each of the Defendants as follows: (1) The Estate was served on February 27, 2023 with a March 20, 2023 deadline to respond to or otherwise move against the Complaint (DE 15); (2) Arjoon and Aarons were each served on February 28, 2023, with a March 21, 2023 deadline to respond to or otherwise move against the Complaint (DE 13-14); (3) Chowlan was served on March 1, 2023, with a March 22, 2023 deadline to respond to or otherwise move against the Complaint (DE 12); Jaigobind was served on March 3, 2023, with a March 23, 2023 deadline to respond to or otherwise move against the Complaint (DE 11).

Only Arjoon has responded to the Complaint, and only Arjoon and Aarons have appeared in this action. Counsel for Aarons filed a Notice of Appearance on March 20, 2023 but has not yet made any other filings. (DE 19.) Arjoon filed an Answer on April 10, 2021, twenty-one days past her deadline to respond. (DE 21.) Arjoon asserted a Counterclaim against Windmill, the substance of which is that she is the designated beneficiary of the Proceeds and the Proceeds must be turned over to her. (DE 21 at ¶¶ 26-34.) The Counterclaim also asserted substantially what Arjoon asserts in her partial opposition to the instant motion, that she consents to Windmill

4

depositing the Proceeds with the Court pending judgment but opposes Windmill's request for attorneys' fees and costs from the Proceeds. (*Id.* at ¶¶ 32-34.)

An initial conference is currently scheduled for June 23, 2023 at 11:30 AM before the undersigned. (Electronic Order dated Apr. 25, 2023.) On May 1, 2023, Windmill filed a Motion for a pre-motion conference regarding its anticipated motion to dismiss Arjoon's Counterclaim and seeking to strike her Answer and Counterclaim as untimely filed. (DE 27.) On May 3, 2023, Arjoon filed a response indicating that she is considering withdrawing her Counterclaim. (DE 29.) The parties indicated they were discussing whether Arjoon would voluntarily withdraw her Counterclaim, and were directed by Judge Matsumoto to advise the Court on or before May 10, 2023 whether Arjoon intended to withdraw it. (*See* Electronic Order dated May 3, 2023.) On May 10, 2023, Arjoon filed a letter stating that she withdraws the Counterclaim in her Answer. (DE 31.)

## II.   DISCUSSION

### A. Subject Matter Jurisdiction

There are two types of interpleader actions, statutory interpleader and rule interpleader. Windmill appears to rely on rule interpleader -- federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) -- as a basis for jurisdiction in its Complaint (DE 1 at ¶ 7) and its briefing (DE 24-1 at 3-4.) Windmill, however, also states in its notice of motion that it moves this Court for an order pursuant to, *inter alia*, 28 U.S.C. § 1335, which is statutory interpleader. (DE 24 at 1.) This need not detain the Court given that the requirements for jurisdiction to proceed under either species of interpleader are satisfied.

### i. *Rule Interpleader*

"Rule 22 of the Federal Rules of Civil Procedure is merely a procedural device; it confers no jurisdiction on the federal courts [and] [t]hus, an interpleader action brought under Rule 22 must fall within one of the general statutory grants of federal jurisdiction, either federal question or diversity jurisdiction." *Hartford Life Insurance Company v. Simonee*, No. 14-CV-7520 (SJF) (ARL) 2015 WL 8490998, at *2 (E.D.N.Y. Dec. 10, 2015) (internal quotations and citations omitted). As the administrator and fiduciary of an employee benefits plan governed by ERISA (DE 1 at ¶¶ 1, 7), Windmill has standing to bring a rule interpleader action. *See Metro. Life Ins. Co. v. Bigelow*, 283 F.3d 436, 440 (2d Cir. 2002). And the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132. *See id.* (holding that subject matter jurisdiction exists under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 in an interpleader action brought by the fiduciaries of an ERISA employee benefit plan); *Metro. Life Ins. Co. v. Carey*, No. 16-CV-3814 (DLI) (SJB), 2017 WL 4351512, at *2 (E.D.N.Y. Sept. 29, 2017) ("Since MetLife brings this interpleader action as a fiduciary under ERISA, this Court has jurisdiction pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331.").

Accordingly, the Court has jurisdiction to proceed under rule interpleader.

### ii. *Statutory Interpleader*

A federal court may exercise subject matter jurisdiction over a statutory interpleader action pursuant to 28 U.S.C. § 1335 if the amount in controversy is $500 or more, and the action involves two or more adverse claimants of diverse citizenship. *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 102 (E.D.N.Y. May 13, 2013). Section 1335 only calls for minimal diversity, meaning diversity of citizenship between two or more claimants, and other claimants

may be co-citizens. *Id*. First, the $220,163.00 in Proceeds at issue here far exceed $500 or more requirement. (DE 1 at ¶ 14.) Second, two or more adverse claimants are minimally diverse: Jaigobind and Chowlan are domiciled in New Jersey, and Aarons, Arjoon and the Estate are domiciled in New York (DE 1 at ¶¶ 3-6). *See, e.g.*, *N.Y. Times Co. v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity*, No. 12-CV-5430, 2017 WL 6987961, at *2 (S.D.N.Y. Dec. 7, 2017) ("Here, . . . two or more adverse claimants are of diverse citizenship. Of the 8 individual defendants, at least one is a citizen of New York and one a citizen of Connecticut. Minimal diversity suffices for § 1335 jurisdiction.") (quotations and citations omitted).

The remaining jurisdictional requirement is that the party alleges "that it has deposited or is depositing the fund with the court." *New York Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 717 (E.D.N.Y. 2012). Windmill has not yet deposited the Proceeds with the Court but that is not a barrier here since it seeks to do so. The "deposit has been construed as a requirement of maintaining interpleader jurisdiction, rather than a prerequisite to bringing suit." *See William Penn Life Ins. Co. of New York v. Viscuso*, 569 F. Supp. 2d 355, 360 (S.D.N.Y. 2008). Indeed, "courts regularly give a stakeholder an opportunity to comply with the deposit requirement before dismissing an interpleader action." *See Citigroup Glob. Markets, Inc. v. KLCC Invs., LLC*, No. 06-CV-5466 (LBS), 2007 WL 102128, at *7 (S.D.N.Y. Jan. 11, 2007).

Thus, independent of rule interpleader, *see supra,* the Court also has jurisdiction to proceed under statutory interpleader pursuant to 28 U.S.C. § 1335.

### B. Personal Jurisdiction

The Court has personal jurisdiction over the Defendants. Jaigobind and Chowlan are domiciled in New Jersey, and Aarons, Arjoon and the Estate are domiciled in New York. (DE 1

7

at ¶¶ 3-6.)  However, statutory interpleader allows a party to utilize nationwide service of process pursuant to § 2361, under which service itself is sufficient to establish personal jurisdiction without need for a separate jurisdictional analysis.  *See Madison Stock Transfer, Inc. v. Exlites Holdings Int'l, Inc.*, 368 F. Supp. 3d 460, 487 (E.D.N.Y. 2019) ("Service under § 2361 itself establishes personal jurisdiction; there is no need for the federal court to concern itself with whether the claimants have minimum contacts with the forum state." (internal quotation marks omitted)).

Here, each of the Defendants were served the Summons and Complaint.  (DE 11-15.)  Thus, this Court has personal jurisdiction over each of them.  *See id.* at 488; *see also Citigroup Glob. Markets, Inc.*, 2007 WL 102128, at *3 ("[2361] allows nationwide service of process in statutory interpleader actions . . . . Therefore, even if [defendant] has no contacts with New York, this Court has personal jurisdiction over [defendant].").

### C. Interpleader is Appropriate

#### i. *Legal Standard*

The purpose of an interpleader action -- an equitable device -- is to afford protection to a stakeholder from "double liability or vexatious, conflicting claims."  *Bank of NY v. First Millennium, Inc.,* 607 F.3d 905, 922 (2d Cir. 2010).  "Whether statutory or under Rule 22, interpleader is designed to protect stakeholders from undue harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim among many has merit."  *Fidelity Brokerage Services, LLC v. Bank of China*, 192 F. Supp. 2d 173, 177 (S.D.N.Y. Mar. 18, 2002) (citing *Washington Elec. Coop. v. Paterson, Walke & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993); *see also New York Life Ins. Co. v. Apostolidis*, 841 F. Supp. 2d 711, 715 (E.D.N.Y. Jan. 24, 2012).

Courts use a two-step approach to evaluate an interpleader action. *Hartford Life Insurance Company v. Simonee*, No. 14-CV-7520 (SJF) (ARL) 2015 WL 8490998, at *2 (E.D.N.Y. Dec. 10, 2015) (citing *Metro. Life Ins. Co.*, 966 F. Supp. 2d at 102). First, the Court must determine whether an interpleader action is appropriate, and if so, the Court discharges the plaintiff from liability. *Metro. Life Ins. Co.*, 966 F. Supp. 2d at 102. Second, the Court adjudicates claims among the remaining adverse parties. *Id*. For purposes of resolving the instant referred motion, the Court need only address the first step.

Interpleader is appropriate where the plaintiff has a real and reasonable fear of double liability or vexatious, conflicting claims, regardless of the merits of the competing claims. *Id*. (citations omitted). "A court is not required to assess the merits of the competing claims in determining whether interpleader is appropriate because 'the stakeholder should not be obliged at its peril to determine which of two claimants has the better claim.'" *Locals 40, 361 & 417 Pension Fund v. McInerney*, No. 06-CV-5224 (JFK), 2007 WL 80868, at *3 (S.D.N.Y. Jan. 9, 2007) (quoting *John Hancock Mut. Life Inc. Co. v. Kraft*, 200 F.2d 952, 954 (2d Cir. 1953).

  *ii.* <u>*Application*</u>

Here, Windmill is subject to competing and adverse claims regarding who is entitled to the Proceeds following Ramrattan's death. As discussed above, after Ramrattan's passing, whether directly or indirectly, each of the Defendants took steps indicating their entitlement to the Proceeds. *See supra* I.A. For example, Arjoon asserts she is entitled to the Proceeds because she possesses a completed beneficiary form showing she was designated as Ramrattan's beneficiary. (DE 1 at ¶ 15; DE 21.) But Jaigobind claims she is entitled to the Proceeds as the Estate's appointed administrator and has questioned the validity of Arjoon's form. (DE 1 at ¶

9

17.)  To add to the complication, Aarons is apparently litigating with Jaigobind the question of who should be appointed administrator of the Estate.  (DE 1 at ¶ 18.)

"This is precisely the situation for an interpleader action, which requires a plaintiff to allege a real and reasonable fear of double liability or vexatious, conflicting claims against the single fund, regardless of the merits of the competing claims." *Apostolidis*, 841 F. Supp. 2d at 717-18 (internal quotations and citations omitted).  "Thus, the fact that multiple claims have been asserted for the [ ] Benefits is the very reason that an interpleader action is appropriate . . . " *Id*. at 718.  Thus, Windmill's interpleader action is therefore appropriate.

### D. Plaintiff's Requests for Relief

#### i. *Deposit Proceeds Pending Judgment*

Windmill requests that it be permitted to deposit $220,163 in Proceeds with the Court pending judgment.  (DE 24 at 1-2.)  Since Windmill has satisfied the jurisdictional requirements, and interpleader is appropriate, the undersigned respectfully recommends granting this application.  If so adopted by the District Judge, then Windmill should deposit the total sum of $220,163.00 plus the applicable accrued interest since April 21, 2023 when the motion was filed, with the Court registry in an interest-bearing account within twenty days of the date of the Court's decision on this Report and Recommendation.  *See Apostolidis*, 841 F. Supp.2d at 719 (directing a plaintiff that met all jurisdictional requirements of § 1335 to deposit the total sum of disputed insurance proceeds with the Court registry in an interest-bearing account).

#### ii. *Discharge from Liability and Dismissal with Prejudice*

Here, Windmill requests that it be discharged from liability regarding the Proceeds, and dismissed from this action with prejudice.  (DE 24 at 1-2.)  In an interpleader action, the court "may discharge the plaintiff from further liability, may enter a permanent injunction restraining

10

the claimants from proceeding in any state or Untied States court in a suit to affect the property, and may make all appropriate orders to enforce its judgment." *Locals 40, 361 & 417 Pension Fund*, 2007 WL 80868, at *3 (citing 28 U.S.C. § 2361); *see also Mendez v. Teachers Insurance and Annuity Association and College Retirement Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992) (finding that pursuant to § 2361, a district court may discharge the stakeholder in any civil interpleader action from further liability to claimants).

"Generally, once an interpleader plaintiff has satisfied the Section 1335 jurisdictional requirements of an interpleader claim, [t]he court should readily grant discharge of the stakeholder, unless it finds that the stakeholder may be independently liable to a claimant or has failed to satisfy the various requirements of interpleader, including, when required, deposit of the stake." *Apostolidis*, 841 F. Supp. 2d at 720 (internal citation omitted); *Hartford Life Insurance Company*, 2015 WL 8490998, at *3 ("If the court is satisfied that both the jurisdictional requirements have been met and interpleader is an appropriate remedy, then the plaintiff-stakeholder is discharged from liability").

A disinterested stakeholder, like here, should be discharged unless there are serious charges that the action was brought in bad faith. *See New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 96 (2d Cir. 1983). That is not the case here. The Court finds that Windmill is a disinterested stakeholder since it claims no interest to the Proceeds, and there is no indication that it has acted in bad faith. There is also no indication that Windmill is independently liable to any Defendant.

Arjoon's objections here are not based on any independent liability Windmill may have to her. Arjoon's statements in her partial opposition regarding Windmill's discharge and dismissal illustrate that. (*Compare* DE 26 at 8-9 ("As previously set forth in Ms. Arjoon's

11

Answer (ECF # 21, paragraph 34), she *does not object* to Windmill's request to deposit the Proceeds into the Registry of this Court pending Judgment; *subsequently be dismissed* from this action with prejudice; and *be discharged from all liability* related to the Proceeds." (emphasis added)) *with* DE 26 at 8 ("Windmill must provide written discovery prior to being dismissed from this action with prejudice and discharged from all liability related to the Proceeds.").

Arjoon's proffered rational for keeping Windmill in this case is insufficient. Arjoon argues that prior to discharging Windmill from liability and dismissing it with prejudice, the Court should allow limited discovery from Windmill regarding the competing claims to the Proceeds. (DE 26 at 5.) Arjoon notes it has served a "Notice to Produce" dated April 3, 2023. (DE 26 at 5.) The Court notes that no scheduling order is in place for discovery. Regardless, Arjoon's position is not an assertion of liability, it is instead a request premised in convenience. The Court sees no reason to tether Windmill to this action based on something that can be achieve through other simpler means, such as a third-party subpoena.

Given the undersigned's recommendation that interpleader is appropriate in this case, and Windmill's status as a disinterested stakeholder, the undersigned respectfully recommends that Windmill is discharged from liability as to the Proceeds, and dismissed with prejudice, conditioned upon its deposit of the Proceeds with the Court.

### iii.   *Injunctive Relief*

Windmill requests that Defendants be enjoined from instituting any further action against it regarding the Proceeds. (DE 24 at 1-2.) "Section 2361 enables a party meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in Rule 65, Fed. R. Civ. P., which normally governs the issuance of injunctive relief." *Sotheby's, Inc. v. Garcia*, 802 F. Supp. 1058, 1066 (S.D.N.Y. 1992). As the Court noted in *Apostolidis*, "a permanent injunction restraining the four Defendant[s] from continuing or

bringing any suits against [Plaintiff] with regard to the [Proceeds] at issue is necessary to protect [Plaintiff] from overlapping lawsuits and to ensure the effectiveness of the interpleader remedy. See *Apostolidis*, 841 F.Supp.2d at 720.

Thus, the undersigned respectfully recommends that Windmill's request for a permanent injunction is granted as to any suits against Windmill with respect to the Proceeds.

### iv. *Attorneys' Fees*

Windmill requests an award of attorneys' fees in an amount to be determined at a later time, and to be deducted from the Proceeds. (DE 24 at 1-2.) This is where Arjoon and Windmill are at an impasse. "A disinterested stakeholder who asserts interpleader is entitled to be awarded costs and attorney's fees" *See Septembertide Pub., B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989). For an award of attorneys' fees and costs, the interpleader-plaintiff must be "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Id*. A disinterested stakeholder may recover for fees incurred while defending against counterclaims where those claims themselves arise from its actions related to being "subject to multiple claims and in commencing the interpleader action." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Clemente*, No. 98-CV-1756 (LMM), 2001 WL 11070, at *7 (S.D.N.Y. Jan. 4, 2001).

Ultimately, "[t]he decision to award fees and costs . . . is left 'to the sound discretion of the district court.'" *Feehan*, 2011 WL 497852, at *6 (quoting *Travelers Indem. Co.*, 354 F.2d at 490), *report and recommendation adopted*, 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011). Courts in this circuit routinely decline to award attorneys' fees to insurers unless the expenses incurred exceed the "ordinary cost of doing business." *See Travelers Indem. Co. v. Israel*, 354 F.2d 488, 490 (2d Cir. 1965) ("We are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their

13

ordinary cost of doing business of their insureds by bringing an action for interpleader.); *Feehan v. Feehan*, No. 09-CV-7016 (DAB) (THK), 2011 WL 497852, at *7 (S.D.N.Y. Jan. 10, 2011) (collecting cases), *report and recommendation adopted*, No. 09-CV-7016 (DAB), 2011 WL 497776 (S.D.N.Y. Feb. 10, 2011); *Metro. Life Ins. Co. v. Mitchell*, 966 F. Supp. 2d 97, 104 (E.D.N.Y. 2013) ("[C]ourts need not award attorneys' fees in interpleader actions where the fees are expenses incurred in the ordinary course of business." (collecting cases)); *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 320-21 (S.D.N.Y. 2014) (collecting cases).

This rationale, originating in the insurance context, has now been applied by courts to other types of cases including as then-District Judge Richard Sullivan did in a dispute over an employee benefits plan. *See PVH Corp. v. Houle*, No. 16-CV-1401 (RJS), 2017 WL 991107, at *1 (S.D.N.Y. Feb. 15, 2017) ("[Courts] have applied the Second Circuit's rationale in *Travelers* 'beyond the classic insurance context to disputes over pension benefits,' finding that '[c]onflicting claims to benefits owed to beneficiaries under an employee welfare benefit plan . . . are inevitable.'" (quoting *Croskey v. Ford Motor Co.-UAW*, No. 01-cv-1094 (MBM), 2002 WL 974827, at *10 (S.D.N.Y. May 6, 2002)).

Here, Windmill states it has already incurred $26,023 in attorneys' fees to date. (DE 24-2 at 2.) Windmill avers that given Arjoon's Counterclaim, it will be forced to defend itself further which will naturally increase its fees and costs. (DE 24-2 at 2.) Thus, Windmill requests leave of the Court to present additional evidence to support its request at a later time so it can provide a complete set of billing records that encompass, *inter alia*, briefing the instant motion and defending against Arjoon's Counterclaim. (*Id.*)

Arjoon opposes an award of attorneys' fees. (DE 27.) Arjoon objects to this request on three grounds: (1) Windmill is not entitled to attorneys' fees since its merely attempting to

14

resolve conflicting claims to benefits as it must do in the ordinary course of business, (2) the amount is unreasonable given the straightforward nature of this interpleader action, and (3) Windmill has failed to provide the proper documentation or support for, *inter alia*, its hourly rates, or to delineate what portion of the amount was incurred by attorneys' billing compared to support staffs' billing.  (DE 26 at 5-7.)

As to the first objection, Arjoon points to *PVH Corp. v Estate of Steven Houle et al.*, No. 16-cv-1401 (RJS), 2017 WL 991107 (S.D.N.Y. Feb. 15, 2017).  There, the court found that resolving conflicting claims is "clearly an activity that [a plan administrator] must undertake in its ordinary course of business." *Id.* at *2.  The court also made note that the plaintiff had not pointed to "any uniquely complicated issues" in the litigation or unique problems that it itself faced throughout the action that could warrant an award of fees. *Id*.  Additionally, the court was hesitant to make a fee award given that the award would amount to over 25% of the fund in that case. *Id*.

Arjoon asks us to find a meaningful difference between the facts of that case and those presented here that would warrant attorneys' fees.  After all, this is also an interpleader action brought by the administrator of an employee benefits plan.  Windmill submits that the *PVH Corp.* Court erred when it extended the rationale applied to insurance proceeds to employee retirement plans.  (DE 28 at 5.)  Windmill avers that its ordinary business operations involve wholesale beverage distribution, and so its expenses in this action are markedly different than its normal business operations.  (DE 28 at 5.)  Windmill contends that *PVH Corp.* involved no discovery and no motion practice, whereas here, Arjoon has propounded discovery and Windmill has and will incur expenses defending against Arjoon's Counterclaim.  (DE 28 at 4.)  Windmill

15

further argues that the fees it seeks are only about 12% of the Proceeds compared to the request in *PVC Corp.*, which was 25% of the funds.  (DE 28 at 4-5.)

Here, as in *PVC Corp.*, Windmill meets the typical requirements that warrant attorneys' fees -- disinterested stakeholder, conflicting claims to the Proceeds, and seeking discharge from liability.  *See PVH Corp.*, 2017 WL 991107 at *2.  Windmill is also the plan administrator of an employee retirement plan just as in *PVH Corp. Id.*  The Court agrees with the rationale espoused in *PVC Corp.*, resolving conflicting claims to benefits is an inevitable activity that a plan administrator would undertake in the ordinary course of its business similar to the issues arise with insurance proceeds or pension funds.  *Id.*; *Croskey v. Ford Motor Co.-UAW*, No. 01-cv-1094 (MBM), 2002 WL 974827, at *10 (S.D.N.Y. May 6, 2002) (declining to award fees to a pension fund and noting cases extending the ordinary course exception to employee welfare benefit plans, and pension benefits).

Moreover, there is no unique obstacle here that warrants an award of attorneys' fees.  An initial conference has not been held and no discovery schedule has been entered.  The Court has recommended discharging Windmill notwithstanding Arjoon's discovery request.  With the exception of Arjoon's now withdrawn Counterclaim, this case has proceeded apace without any unique complications and without any meaningful motion practice or other protractions.  The Counterclaim asserted simply regurgitated the arguments that Arjoon then repeated in her partial opposition to this motion, which are arguments that Windmill would have had to address, nonetheless.  And though Windmill filed a two-page pre-motion conference letter and engaged in a discussion with Arjoon to withdraw the Counterclaim, given the otherwise straightforward nature of this action, there are no unique circumstances that warrant fees.

16

The three cases Windmill relies on do not lead to a different conclusion. (DE 28 at 5.) First, in *Correspondent Services Corp.*, the court found that the fees incurred by the interpleader-plaintiff were not in the ordinary course of its business because "[t]he typically expected costs associated with running the securities brokerage business differ in that respect from the costs typically associated with the insurance business." *Correspondent Servs. Corp. v. J.V.W. Invs. Ltd.*, 204 F.R.D. 47, 49 (S.D.N.Y. 2001). The work of a securities brokerage business surely differs from that of an insurance business, but is also far different than a dispute as to employee retirement plan funds and an interpleader action by a plan administrator.

Second, in *Jackson* the court did not grant the insurance company attorneys' fees as part of its Opinion & Order granting summary judgment. *See Metro. Life Ins. Co. v. Jackson*, 896 F. Supp. 318, 325 (S.D.N.Y. Aug. 9, 1995). Instead, the court noted that the interpleader-plaintiff had not provided evidence that the fees sought for "house counsel, are not part of its ordinary business," and directed interpleader-plaintiff to submit a supplemental memorandum explaining that point. *Id*. Subsequently, the claimant that the court entered judgment in favor of, and the interpleader-plaintiff, mutually agreed to a sum of $1,900 in attorneys' fees and submitted an executed Stipulation and Order to that effect. *See Metro. Life Ins. Co. v. Jackson*, No. 94-CV-07725 (SS) (filed S.D.N.Y. Oct. 25, 1994) (DE 22; DE 23). This case has no bearing here.

Third, in *Estate of Garcia*, the court awarded the insurance company attorneys' fees where the court noted:

> [T]his case clearly involved unique problems for a disinterested stakeholder, threatened with claims from one attorney that the proceeds were the subject of ongoing state court actions, claims from the identified beneficiary of the Policy, and claims from an estate for which no administrator had yet been appointed. Moreover, information about the ongoing state court actions was not publicly available because at least one was a custodial dispute in Family Court.

17

*Travelers Ins. Co. v. Est. of Garcia*, No. 00-CV-2130 (ILG), 2003 WL 1193535, at *5 (E.D.N.Y. Feb. 4, 2003).

Here, the fees requested by Windmill include those associated with the withdrawn Counterclaim, and the following: "[A]nalysis and research of the multiple claims to the proceeds, preparation of the Complaint, discussions with Defendants' counsels, costs incurred with service of process on the Defendants, and preparation of this Motion." (DE 24-1 at 7.) Windmill has not asserted that it incurred costs associated with circumstances substantially similar to those in *Estate of Garcia*. Further, the work there necessitated that the interpleader-plaintiff prepare for numerous court conferences, ferret out some of the potential out-of-state defendants and attempt to serve them, confer with opposing counsel on multiple occasions, incur "extraordinary fees" related to motion for summary judgment because of counterclaims, and deal with "an unusual case where the identity of the [five] minor children was difficult to ascertain . . . ." *Id*. at *6. That case involved a lot more atypical effort and expense than the relatively straightforward interpleader action the case docket here reflects.

Accordingly, the Court respectfully recommends Windmill's request for attorneys' fees be denied.

## CONCLUSION

For the reasons stated herein, the undersigned respectfully recommends granting in part and denying part Windmill's Motion for Interpleader Deposit (DE 24) as follows:

1. Enter judgment providing for interpleader relief in favor of Windmill and directing Windmill to deposit the total sum of $220,163.00 plus any applicable accrued interest since April 21, 2023 when the motion was filed, with the Court registry in an interest-bearing account within twenty days of a favorable decision on this Report and Recommendation.

2. Following the deposit: (1) Enter an order discharging Windmill from liability as to the Proceeds, permanently enjoining any future suits against Windmill with respect to the Proceeds, and dismissing Windmill from this case with prejudice.

3. Deny Windmill's request for attorneys' fees from the Proceeds.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action 4prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:  Central Islip, New York
        May 11, 2023

                              **Respectfully recommended,**

                              /S/ *James M. Wicks*
                              _____
                                  JAMES M. WICKS
                              United States Magistrate Judge